UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AHMAD MUKHTAR FAIZI, an individual and derivatively on behalf of FALAFEL FLAME, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BAKTASH TEMORI, et al.,<br><br>Defendants. | Case No. 22-cv-04224-VKD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 26 |

Plaintiff Ahmad Mukhtar Faizi filed a "Verified Shareholder Derivative Complaint for Money Damages and Injunctive Relief," on behalf of nominal defendant Falafel Flame, Inc. ("Falafel Flame" or "company") against two of Falafel Flame's directors, Baktash Temori and Masoud Rustakhis, as well as a number of entities, including Falafel Flame restaurants in Dublin, Tracy, and Concord, California; several restaurants or entities named "Falafel Flame" in Fremont, Hayward, Sunnyvale, Upland, and San Jose, California; and several "Blaze BBQ" entities.[1]

Now before the Court is Mr. Faizi's motion for a preliminary injunction.[2] Defendants oppose the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants Mr. Faizi's motion for a preliminary injunction, subject to

---

[1] At Mr. Faizi's request, the Clerk of Court entered default against defendant Tolo Mediterranean, Inc. *See* Dkt. Nos. 18, 21.

[2] Mr. Faizi originally moved for a temporary restraining order and for a preliminary injunction. The Court construed the motion as one for a preliminary injunction and set an expedited briefing and hearing schedule on the matter. Dkt. No. 27.

the posting of a $4,000 bond, as discussed below.[3]

## I.   BACKGROUND

According to the complaint, on November 20, 2019, Messrs. Faizi, Temori, and Rustakhis founded Falafel Flame to open a chain of restaurants under the trade name "Falafel Flame." Dkt. No. 1 ¶ 30. Messrs. Faizi, Temori and Rustakhis each own 33.33% of the company. *Id*. ¶ 31. Additionally, Falafel Flame and Messrs. Faizi, Temori, and Rustakhis entered into a "Shareholders Agreement for Falafel Flame, Inc." ("Shareholders Agreement"), including terms for authorizing and approving future Falafel Flame restaurants. *Id*. ¶ 251 & Ex. F. Mr. Faizi avers that Falafel Flame does not operate or own a restaurant location, and was established to be the parent holding company, which holds intellectual property rights and grants licenses to individual Falafel Flame locations. Dkt. No. 26-1 ¶¶ 4-5.

The complaint further states that on September 8, 2020, Falafel Flame obtained a federally registered service mark, FALAFEL FLAME®. Dkt. No. 1 ¶¶ 32, 42 & Ex. D. As described by the purported registration certificate attached to the complaint, "[t]he mark consists of a stylized drawing of flames in orange and black, in an orange circle, above the words 'Falafel Flame' in orange letters with yellow outlining, all against a black background." *Id*., Ex. D. Further, the registration notes that "[t]he color(s) orange, yellow and black is/are claimed as a feature of the mark." *Id.*

Relevant to the present motion, Mr. Faizi alleges that defendants opened multiple competing falafel eateries using the FALAFEL FLAME® mark, without proper authorization. Specifically, Mr. Faizi says that in March 2021 and in January 2022, he discovered four new, unapproved restaurants in Hayward, San Jose, Sunnyvale, and Upland, California,[4] operating under the name "Falafel Flame" and using the FALAFEL FLAME® mark. Dkt. No. 1 ¶¶ 35, 36,

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 22, 23, 29.

[4] The entities allegedly operating unapproved "Falafel Flame" restaurants include "Falafel Flame Fremont." *See* Dkt. No. 1 ¶ 15. However, it is not clear whether there is an unapproved "Falafel Flame" eatery operating in Fremont, California  The complaint focuses on the four alleged unapproved restaurants in Hayward, Sunnyvale, San Jose, and Upland, California—as does Mr. Faizi's proposed injunction. *See* Dkt. Nos. 1, 26-2.

2

47; Dkt. No. 26-1 ¶ 16. Messrs. Temori and Rustakhis allegedly also created a number of "Blaze BBQ" restaurants, which use Falafel Flame's name and logo without permission, including in social media posts indicating that the Blaze BBQ establishments are "Sponsored By: Falafel Flame." Dkt. No. 1 ¶¶ 38, 70 & Ex. C; Dkt. No. 26-1 ¶¶ 17-19 & Ex. H.

On July 20, 2022, Mr. Faizi filed the present action, asserting 22 claims for relief, including both direct claims for himself and derivative claims on Falafel Flame's behalf. Dkt. No. 1 ¶¶ 69-302. He subsequently filed the present motion for preliminary injunction on September 16, 2022. Dkt. No. 26.

As Mr. Faizi emphasizes, his motion for preliminary injunction concerns "only trademark infringement." Dkt. No. 31 at 2. Although it is unclear from the briefing which claim or claims might form the basis for the present motion, at the motion hearing Mr. Faizi clarified that the pertinent claims are those for trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (claim 1), trademark infringement under California law (claim 2), and trademark dilution under California law (claim 3). Each of these claims is asserted derivatively by Mr. Faizi against Messrs. Temori and Rustakhis and the "Falafel Defendants," a term which the Court understands to refer to the alleged unapproved establishments operating under the name "Falafel Flame."[5] *See id*. ¶¶ 69-93. While those trademark claims are brought pursuant to federal and state law, Mr. Faizi's motion for preliminary injunction focuses primarily on the Lanham Act.

The motion essentially seeks to enjoin all defendants, "their officers, agents, servants, employees, and all other persons acting in concert or participation with them" from continuing to operate the unapproved establishments in Hayward, San Jose, Sunnyvale, and Upland, California under the name "Falafel Flame" and from engaging in ongoing infringement of the FALAFEL FLAME® mark. *See* Dkt. No. 26-2. Mr. Faizi also requests an order expediting discovery to permit him to depose Messrs. Temori and Rustakhis. *See* Dkt. No. 26 at 21-22.

---

[5] *See* Dkt. No. 1 ¶ 16 (defining "Falafel Defendants"). Mr. Faizi confirms that the present motion does not concern so-called "approved" Falafel Flame restaurants in Concord, Tracy, and Dublin, California. *See* Dkt. No. 31 at 3 n.2; *see also* Dkt. No. 1 ¶¶ 17, 33-34 & Ex. B.

3

## II. LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy" that is "never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Rather, the moving party bears the burden of demonstrating that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. In *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious questions" sliding scale approach survives *Winter*. 632 F.3d 1127, 1134-35 (9th Cir. 2011). Thus, a court may grant a request for a preliminary injunction if a plaintiff demonstrates that there are serious questions going to the merits and that the balance of hardships tips sharply in their favor, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## III. DISCUSSION

### A. Unclean Hands and Acquiescence

Before turning to the substance of Mr. Faizi's preliminary injunction motion, the Court first addresses defendants' primary argument that the motion should be denied because Mr. Faizi has "unclean hands" and has acquiesced in the non-payment of royalties. *See* Dkt. No. 30 at 2-4; Dkt. No. 30-1.

#### 1. Unclean hands

Defendants assert that Mr. Faizi stole money from Falafel Flame Concord and has threatened Falafel Flame employees. Dkt. No. 30 at 4; Dkt. No. 30-1 ¶¶ 10, 11, 13, 19-22. Defendants also suspect that Mr. Faizi has used money taken from Falafel Flame Concord to open a competing falafel restaurant in Livermore, California, although they seem to acknowledge they do not yet have proof regarding ownership to substantiate their suspicions. *See* Dkt. No. 30-1 ¶ 23. Mr. Temori avers that, although Mr. Faizi maintains ownership of his shares, in July 2021, Mr. Faizi was removed as a director, officer and employee of all Falafel Flame companies (*see id.* ¶ 14)—an assertion that Mr. Faizi disputes.

Defendants correctly note that the doctrine of unclean hands "bars relief to a plaintiff who

4

has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). However, "the doctrine does not apply to all prior bad conduct, but instead is an affirmative defense available 'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'" *Nikoonahad v. Greenspun Corp.*, No. CV 10–01247 JF (PVT), 2010 WL 2593670, at *3 (N.D. Cal. June 22, 2010) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)); *accord Dollar Sys., Inc.*, 890 F.2d at 173 ("It is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made.") (internal quotations and citation omitted).

In the present case, defendants' assertions regarding Mr. Faizi's unclean hands may implicate relief he seeks for himself in this action. However, in the context of the present motion, which seeks preliminary injunctive relief solely based on the trademark claims asserted on Falafel Flame's behalf, defendants' arguments are not persuasive. As discussed below, it is undisputed that Falafel Flame, not Mr. Faizi, owns the mark at issue. Defendants do not argue or present evidence of any misconduct by the company that might preclude the preliminary injunctive relief sought in the motion. Even assuming that Mr. Faizi was removed as a director in July 2021, that does not undermine his allegation that defendants were operating unauthorized "Falafel Flame" establishments as of March 2021.

### 2. Acquiescence

To the extent the motion for preliminary injunction takes issue with the non-payment of royalties for use of the FALAFEL FLAME® mark and other claimed intellectual property, defendants maintain that Mr. Faizi himself has not paid or required payment of such royalties, even when he was the Chief Financial Officer for several Falafel Flame restaurants. *See* Dkt. No. 30 at 2, 3. Accordingly, defendants contend that the motion for preliminary injunction should be denied because Mr. Faizi is not only culpable of the same misconduct about which he complains, but also acquiesced in the alleged non-payment of royalties.

1      While Mr. Faizi's alleged acquiescence in the non-payment of royalties may be relevant to
2  the breach of contract claims in the complaint, the Court agrees with Mr. Faizi that Falafel Flame's
3  alleged failure to obtain licensing fees from approved establishments is an issue that is separate
4  and distinct from defendants' alleged infringement of the FALAFEL FLAME® mark.  There is no
5  indication or evidence that Falafel Flame acquiesced in the infringement of its mark, which is the
6  subject of the present motion.  Defendants have not demonstrated that alleged acquiescence
7  regarding the non-payment of royalties is a basis to deny the requested injunctive relief.

### B.      Likelihood of Success on the Merits

To prevail on a trademark infringement claim, a plaintiff must show that (1) it has a valid, protectible trademark, and (2) the defendants' use of the mark is likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A); *Applied Info. Scis. Corp. v. eBay, Inc*., 511 F.3d 966, 969 (9th Cir. 2007).

#### 1.      Ownership of federally registered mark

"Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Id*. at 970 (internal quotations and citation omitted); *see also* 15 U.S.C. § 1115(a) ("Any registration . . . of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein . . ..").

Mr. Faizi has submitted documentation showing that Falafel Flame is the owner of the federally registered FALAFEL FLAME® mark—a matter that defendants do not dispute. *See* Dkt. No. 26 at 12; Dkt. No. 1 ¶¶ 42-43 & Ex. D.

#### 2.      Likelihood of confusion

"When the goods produced by the alleged infringer compete for sales with those of the

United States District Court
Northern District of California

trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). "The alleged infringer's intent in adopting the mark is weighed, both as probative evidence of the likelihood of confusion and as an equitable consideration." *Id*. at 348 n.9. "When the goods are related, but not competitive, several other factors are added to the calculus," including (a) strength of the mark; (b) similarity of the marks; (c) proximity of the goods/services sold; (d) similarity in the marketing channels used; (e) type of goods/services and degree of care likely to be exercised by purchasers; (f) evidence of actual confusion; (g) defendant's intent in selecting its mark; and (h) likelihood of expansion into other markets. *Id*. at 348, 349. These elements are not applied mechanically; courts may examine some or all of the factors, depending on their relevance and importance. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).

Defendants' opposition papers do not address Mr. Faizi's arguments concerning their alleged infringement of the FALAFEL FLAME® mark, and defendants seemed to concede the issue. At the motion hearing, defendants argued that they believed their use of the FALAFEL FLAME® mark is authorized by section 12.01 of the Shareholders Agreement, which provides, in part, that "[t]he Shareholders . . . may engage or invest in, independently or with others, any business activity of any type of description," including activities that compete with the company. *See* Dkt. No. 1, Ex. F. On the present record, and at this stage of the litigation, however, defendants have not persuasively demonstrated that tortious trademark infringement is permitted "business activity" within the meaning of section 12.01 of the Shareholders Agreement.

The record presented indicates that authorized licensees of Falafel Flame compete directly with the four unapproved "Falafel Flame" restaurants using the identical or substantially similar mark. Confusion therefore appears likely. *See Sleekcraft*, 599 F.2d at 348. The Court nonetheless has independently examined the additional *Sleekcraft* factors, including defendants' intent in adopting the FALAFEL FLAME® mark, and concludes that Mr. Faizi is likely to succeed on this element of his Lanham Act claim on Falafel Flame's behalf.

### a. Strength of the Mark

A mark's strength lies in its distinctiveness, which is measured on a continuum from arbitrary and fanciful marks, to suggestive marks, to descriptive marks, to generic marks. *See generally Surgicenters of Am., Inc. v. Med. Dental Surgeries Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979). Arbitrary and fanciful marks are strong and are "afforded the widest ambit of protection," whereas a "descriptive mark tells something about the product [and] will be protected only when secondary meaning is shown." *Sleekcraft*, 599 F.2d at 349. "In between lie suggestive marks which subtly connote something about the products" and are "less distinctive than an arbitrary or fanciful mark," but nonetheless "will be protected without proof of secondary meaning." *Id.* A generic mark "refers, or has come to be understood as referring, to the genus of which the particular product or service is species" and "cannot become a trademark under any circumstances." *Surgicenters of Am., Inc.*, 601 F.2d at 1014.

Although Mr. Faizi contends that Falafel Flame's mark is strong and inherently distinctive, he essentially argues that the mark is suggestive in that it "subtly connote[s]" something about the goods and services offered without being descriptive of those goods and services. Dkt. No. 26 at 13. For present purposes, the Court finds that the FALAFEL FLAME® mark is a suggestive mark that is protected without proof of secondary meaning.

### b. Similarity of the Marks

While the colors and the placement of the graphic and text in some of the marks used by defendants appear to be somewhat different, there is no dispute that defendants are using a mark that otherwise is identical to the mark owned by Falafel Flame. *See* Dkt. No. 1 ¶¶ 42, 47 & Ex. D; Dkt. No. 26-1 ¶¶ 16, 25, 28, 30 & Exs. C-E.

### c. Proximity of the goods/services sold

There is no dispute that the parties use the FALAFEL FLAME® mark in connection with the same goods and services, namely falafel-based restaurants and eateries. *See* Dkt. No. 1 ¶¶ 33-36, 42, 47 & Ex. D; Dkt. No. 26-1 ¶ 16.

### d. Similarity in the marketing channels used

There is evidence that defendants, like approved Falafel Flame restaurants, use the internet,

8

social media and "pop-up" events to advertise and promote their products. *See* Dkt. No. 26-1 ¶¶ 25-31, 35-36. Defendants have not offered any argument or evidence to the contrary.

### e. Type of goods/services and degree of care likely to be exercised by purchasers

As discussed above, the parties offer identical goods and services, namely falafel-based restaurants and eateries. Mr. Faizi avers that the menu items at the unapproved restaurants in question offer "comparable items at similarly inexpensive costs," (Dkt. No. 26-1 ¶ 37), thereby suggesting that consumers exercise less care when purchasing such items. *See generally E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) ("When goods are expensive, it is assumed that buyers will exercise greater care in their purchases. The district court found that consumers tend to exercise less care when purchasing lower cost items like wine and cheese, and thus rely more on brand names."). Defendants have not offered any argument or evidence to the contrary.

### f. Evidence of actual confusion

Mr. Faizi has submitted social media posts and reviews that he claims demonstrate that (1) defendants are deliberately deceiving falafel customers into thinking that the unapproved "Falafel Flame" establishments are associated with Falafel Flame and (2) customers actually are confused. Standing alone, the two examples Mr. Faizi cites are insubstantial evidence. Nevertheless, for present purposes, the examples suggest that customers may be confused by defendants' alleged unauthorized use of the FALAFEL FLAME® mark. For example, Mr. Faizi presents a screenshot of an exchange on Facebook in which one user asks "What's the best falafel in east bay?" A response posted by "Sami Ullah" lists various approved and unapproved "Falafel Flame" restaurants:

> Falafel Flame Dublin
> Falafel Flame Sunnyvale
> Falafel Flame Hayward
> Falafel Flame Tracy
> Falafel Flame San Jose is coming soon!

Dkt. No. 26-1 ¶¶ 32-33 & Ex. F. The complaint states that Falafel Flame Dublin and Falafel Flame Tracy are approved establishments, whereas the other listed locations are not. *See* Dkt. No.

9

1 ¶¶ 33, 35, 36. Mr. Faizi believes that Sami Ullah is a part-owner of one or more unapproved "Falafel Flame" restaurants. Dkt. No. 26-1 ¶ 33.

Mr. Faizi also submits a Yelp review, in which one customer praised an approved Falafel Flame restaurant in Dublin, California, noting that "everything was good," but was "disappointed" by a subsequent experience at an unapproved "Falafel Flame" restaurant in Sunnyvale, California based on the quality of the service and food. *See* Dkt. No. 26-1 ¶ 34 & Ex. G.

Defendants have not offered any argument or evidence to the contrary.

### g. Defendants' intent in selecting their mark

The complaint alleges that Messrs. Temori and Rustakhis established the unapproved "Falafel Flame" restaurants and eateries, using the FALAFEL FLAME® mark, in order to take advantage of and profit from Falafel Flame's goodwill. Indeed, as shareholders, directors and founders of Falafel Flame, Messrs. Temori and Rustakhis had prior knowledge of the FALAFEL FLAME® mark. *See* Dkt. No. 1 ¶¶ 30, 31, 251 & Ex. F. Mr. Faizi contends that Messrs. Temori and Rustakhis began opening new establishments under the name "Blaze BBQ" precisely because they realized that they could not legally use the FALAFEL FLAME® mark, but nonetheless continued to indicate that the "Blaze BBQ" entities are "Sponsored By: Falafel Flame." *See* Dkt. No. 1 ¶¶ 37, 38. In view of evidence indicating that defendants use marks that are substantially similar, if not identical to, the FALAFEL FLAME® mark, the Court finds that Mr. Faizi has established defendants' intent to use that mark. *See Sleekcraft*, 599 F.3d at 354 ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived.")

Defendants have not offered any argument or evidence to the contrary.

### h. Likelihood of expansion into other markets

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.3d at 354. The record demonstrates that defendants have established multiple unapproved falafel-based restaurants and eateries that directly compete with approved Falafel Flame restaurants, using the FALAFEL

FLAME® mark or a substantially similar mark. *See* Dkt. No. 1 ¶¶ 35, 36, 42, 47; Dkt. No. 26-1 ¶ 16. Mr. Faizi has made a sufficient showing on this factor.

In sum, based on the foregoing, the Court finds that Mr. Faizi has established a likelihood of success on the merits of the derivative claim for trademark violation under the Lanham Act.[6]

### C. Irreparable Harm

When a court finds that a plaintiff has established it is likely to succeed on the merits of a claim for trademark infringement under the Lanham Act, the plaintiff is entitled to a "rebuttable presumption of irreparable harm[.]" 15 U.S.C. § 1116(a). Because the Court has concluded that Mr. Faizi is likely to succeed on the merits, the presumption of irreparable harm applies. While defendants contend that the possibility of any harm caused by their competing businesses is minimal, and that money is a sufficient remedy for any such harm, they have not offered argument or evidence that rebuts the presumption.

### D. Balance of Equities

"Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Mr. Faizi contends that Falafel Flame "is limited in its expansion opportunities as [Messrs. Temori and Rustakhis] race to open competing infringing falafel eateries in desirable locations" and that their alleged infringing activities prevent Falafel Flame from "conduct[ing] any quality control over the products and services sold under its" mark. Dkt. No. 26 at 6. However, insofar as Falafel Flame simply is a holding company that holds intellectual property rights and grants licenses to individual Falafel Flame restaurants (*see* Dkt. No. 26-1 ¶¶ 4-5), the Court is not persuaded that the company is harmed to the extent it claims that it cannot engage in activities that it apparently does not conduct anyway, such as training individuals and exercising quality control over food and services. However, Mr. Faizi persuasively argues that there is some harm to the company's interests to the extent defendants' alleged infringement prevents the company from deciding who

---

[6] Defendants argue that all of the complaint's allegations are subject to dismissal, for reasons raised in their pending motion to dismiss. The Court will separately issue its order on that motion, but notes here that defendants' motion to dismiss is denied.

11

is permitted to use the FALAFEL FLAME® mark, as Falafel Flame may be injured if the goodwill and reputation associated with the mark is diminished by unapproved uses of it.

In their opposition brief, defendants do not identify any particular hardship they would experience if the Court were to grant preliminary injunctive relief.  To the extent defendants' opposition might be construed as addressing this factor at all, defendants argue that injunctive relief is unnecessary because "[t]here is no harm in this case that cannot be remedied by a damages award." Dkt. No. 30 at 5.  At the motion hearing, defendants asserted that complying with an injunction enjoining the use of the FALAFEL FLAME® mark would impose a tremendous hardship, positing that they would have to entirely reorganize their businesses. However, defendants have presented nothing to substantiate their claims of hardship.  While Mr. Temori avers that "none of the Falafel Flame or Blaze BBQ restaurants are profitable yet" (Dkt. No. 30-1 ¶ 28), "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Dr. Seuss Enters., L.P. v. Penguinn Books USA, Inc.*, 924 F. Supp. 1559,1574 (S.D. Cal. 1996) (internal quotations and citation omitted).  In any event, as discussed below, the injunctive relief ordered by the Court will not prohibit defendants from continuing to operate their businesses; they must simply stop conducting business using the FALAFEL FLAME® mark without authorization.

The Court finds that the balance of equities tips in Mr. Faizi's favor.

### E. Public Interest

"In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement." *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc*., 692 F.2d 1272, 1275 (9th Cir. 1982).  The Court concludes that an injunction is in the public interest because it will prevent further infringing conduct and consumer confusion.  *See Am. Rena Int'l Corp. v. SisJoyce Int'l Co. Ltd.*, 534 F. App'x 633, 636 (9th Cir. 2013) ("An injunction that prevents consumer confusion in trademark cases . . . serves the public interest."); *Restoration Hardware, Inc v. Sichuan Wei Li Tan Xiz Network Tech. Co. Ltd.* No. 22-cv-03054-JSC, 2022 WL 4596622 at *2 (N.D. Cal. July 11, 2022) (finding that "an injunction is in

the public interest because it will prevent further infringing conduct and protect the public from counterfeit products.").

Accordingly, the Court finds that Mr. Faizi has satisfied the requirements for a preliminary injunction in aid of his derivative trademark claims.

### F. Bond

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Generally, the purpose of a bond is provide an amount sufficient to cover the defendants' costs arising from an injunction that is improvidently granted. *See Dr. Seuss Enters., L.P.*, 924 F. Supp. at 1575.

While Mr. Faizi argues that courts have discretion to dispense with a bond, he has not persuasively argued or demonstrated why that would be appropriate here. Although he believes the trademark infringement claims are strong, at oral argument he also recognized that there is harm to defendants if the claims fail. Neither Mr. Faizi nor defendants have provided the Court with a proposed bond amount, or even a methodology by which to calculate an appropriate bond.

The alleged infringing activity in question is not the operation of defendants' restaurants, but defendants' alleged unauthorized use of the FALAFEL FLAME® mark. As discussed above, defendants do not address exactly what an injunction against the use of the FALAFEL FLAME® mark would entail. But at a minimum, the parties seem to agree it would require defendants to change their restaurants' names and signage and to reprint menus. Absent any evidence from either side as to the costs of such an endeavor, the Court sets a bond at $1,000 per unauthorized "Falafel Flame" restaurant, for a total bond of $4,000.

The obligation to post the bond falls upon Falafel Flame as the owner of the mark in question. At the motion hearing, Mr. Faizi stated that he may opt to personally post the bond on behalf of the company. Either way, the Court will require the $4,000 bond to be posted within 14 days from the date of this order.

### G. Injunction

As discussed at the motion hearing, the Court has concerns about the scope of Mr. Faizi's

1 proposed injunction (Dkt. No. 26-2), which Mr. Faizi acknowledged is overbroad. The Court
2 instead enters an injunction as follows:
3       Messrs. Temori and Rustakhis, the defendants operating falafel-based restaurants or
4 eateries under the name "Falafel Flame" ("Unapproved Falafel Defendants"), their officers,
5 agents, servants, employees, and all other persons acting in concert or participation with them are
6 enjoined from:

    (1) Using, imitating, copying, or making any other infringing use of the FALAFEL FLAME® mark and any other mark confusingly similar or identical to the FALAFEL FLAME® mark;

    (2) Operating Falafel Flame Hayward, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

    (3) Operating Falafel Flame Sunnyvale, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

    (4) Operating Falafel Flame Upland, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

    (5) Operating Falafel Flame San Jose, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

    (6) Claiming sponsorship or endorsement by, or similar affiliation with Falafel Flame, or in any other way attempt to benefit from the goodwill of the FALAFEL FLAME® mark; and

    (7) Engaging in any other act likely to cause confusion or mistake, or to deceive consumers of restaurant services or food/beverage services and products into believing that defendants or their business, products, services, or other commercial activities in California are in any way affiliated, connected, or associated with Falafel Flame or its goods and services offered under the FALAFEL FLAME® mark.

      It is further ordered that Messrs. Temori and Rustakhis, the Unapproved Falafel Defendants, their officers, agents, servants, employees, and all other persons acting in concert or participation with them:

 (1) Remove from display and cease all use of any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FALAFEL FLAME® mark, including from all Internet webpages and social media accounts within these defendants' custody or control; and

 (2) Remove from display and cease all use of signage, menus, and other physical materials comprising, bearing or displaying the FALAFEL FLAME® mark within these defendants' custody and control.

This injunction shall take effect upon posting of the bond required and shall remain in effect for the pendency of this action, unless it is modified upon request of a party or parties and by order of the Court, or until it is dissolved by the Court.

### H. Mr. Faizi's Request for Expedited Discovery

Finally, Mr. Faizi requests an order permitting him to take expedited discovery—specifically, depositions of Messrs. Temori and Rustakhis to obtain information "regarding the manner in which they granted licenses to use Falafel Flame, Inc.'s trademarks, if at all," and "to discover other unauthorized uses of the FALAFEL FLAME®" mark. Dkt. No. 26 at 22. At the motion hearing, however, Mr. Faizi stated that he believes interrogatories, rather than expedited depositions, will suffice. Defendants do not address this matter at all.

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc*., 208 F.R.D. 273, 276 (N.D. Cal. 2002). "[C]ourts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Id*. The Court finds good cause to permit Mr. Faizi to immediately serve interrogatories on Messrs. Temori and Rustakhis to determine the manner in which they granted licenses, if at all, to use the FALAFEL FLAME® mark and to discover other unauthorized uses of the FALAFEL FLAME® mark. Unless otherwise ordered, any interrogatories Mr. Faizi chooses to serve on an expedited basis will count against the presumptive limits on such discovery set forth in the Federal Rules of Civil Procedure.

## IV. CONCLUSION

Mr. Faizi's motion for preliminary injunction is granted consistent with the terms set out in this order.

**IT IS SO ORDERED.**

Dated: October 12, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

16