UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

AHMAD MUKHTAR FAIZI,

Plaintiff,

v.

BAKTASH TEMORI, et al.,

Defendants.

Case No.  22-cv-04224-VKD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION RE CONTEMPT**

Re: Dkt. No. 47

Plaintiff Ahmad Mukhtar Faizi filed a "Verified Shareholder Derivative Complaint for Money Damages and Injunctive Relief," on behalf of nominal defendant Falafel Flame, Inc. ("Falafel Flame" or "company") against two of Falafel Flame's directors, Baktash Temori and Masoud Rustakhis, as well as a number of entities, including various allegedly unauthorized Falafel Flame eateries.  Mr. Faizi now moves, on Falafel Flame's behalf, for an order finding defendants in civil contempt and liable for sanctions for failing to comply with this Court's preliminary injunction (Dkt. No. 35).  Upon consideration of the moving and responding papers, as well as the oral arguments and testimony presented at the proceedings held on February 14, 2023, the Court grants the motion for contempt and sanctions in part and denies it in part.[1]

## I.   BACKGROUND

According to the complaint, on November 20, 2019, Messrs. Faizi, Temori, and Rustakhis founded Falafel Flame to open a chain of restaurants under the trade name "Falafel Flame."  Dkt. No. 1 ¶ 30.  Messrs. Faizi, Temori and Rustakhis each own 33.33% of the company.  *Id*. ¶ 31.

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 22, 23, 29.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Additionally, Falafel Flame and Messrs. Faizi, Temori, and Rustakhis entered into a "Shareholders

2    Agreement for Falafel Flame, Inc.," including terms for authorizing and approving future Falafel

3    Flame restaurants. *Id.* ¶ 251 & Ex. F. Mr. Faizi avers that Falafel Flame does not operate or own

4    a restaurant location, and was established to be the parent holding company, which holds

5    intellectual property rights and grants licenses to individual Falafel Flame locations in exchange

6    for a royalty of $1,000 per month paid to Falafel Flame. Dkt. No. 26-1 ¶¶ 4-5; *see also* Dkt. No. 1

7    ¶ 33. The complaint further states that on September 8, 2020, Falafel Flame obtained a federally

8    registered service mark, FALAFEL FLAME®. Dkt. No. 1 ¶¶ 32, 42 & Ex. D.

9        In sum, Mr. Faizi claims that defendants opened multiple competing falafel eateries using

10    the FALAFEL FLAME® mark, without proper authorization.[2] On October 12, 2022, the Court

11    granted Mr. Faizi's motion for a preliminary injunction regarding so-called "Unapproved Falafel

12    Defendants" as to trademark infringement only. Dkt. No. 35. The specific focus of Mr. Faizi's

13    complaint and his proposed injunction were four allegedly unapproved restaurants in Hayward,

14    Sunnyvale, San Jose,[3] and Upland, California. *See* Dkt. No. 35 at 2 n.4 & 13-15; *see also* Dkt.

15    Nos. 1, 26-2.[4] The Court found Mr. Faizi's proposed injunction overbroad in certain respects and

16    entered a narrower preliminary injunction as follows:

17
18        Messrs. Temori and Rustakhis, the defendants operating falafel-based restaurants or eateries under the name "Falafel Flame" ("Unapproved Falafel Defendants"), their officers, agents, servants, employees, and all other persons acting in concert or participation with them are enjoined from:

19
20        (1) Using, imitating, copying, or making any other infringing use of the FALAFEL FLAME® mark and any other mark confusingly similar or identical to the FALAFEL FLAME® mark;

21
22        (2) Operating Falafel Flame Hayward, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

23

24    [2] Mr. Faizi's complaint also asserts individual claims for relief that are not at issue in the present

25    motion.

26    [3] Defendants sometimes also refer to the San Jose location as the "Saratoga" location.

27    [4] Mr. Faizi confirmed that his proposed injunction did not concern so-called "approved" Falafel
Flame restaurants in Concord, Tracy, and Dublin, California. *See* Dkt. No. 35 at 3 n.5 (citing Dkt.

28    No. 31 at 3 n.2; Dkt. No. 1 ¶¶ 17, 33-34 & Ex. B).

1

(3) Operating Falafel Flame Sunnyvale, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

2

3

(4) Operating Falafel Flame Upland, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

4

(5) Operating Falafel Flame San Jose, Inc. under the name "Falafel Flame" or using the FALAFEL FLAME® mark;

5

6

(6) Claiming sponsorship or endorsement by, or similar affiliation with Falafel Flame, or in any other way attempt to benefit from the goodwill of the FALAFEL FLAME® mark; and

7

8

(7) Engaging in any other act likely to cause confusion or mistake, or to deceive consumers of restaurant services or food/beverage services and products into believing that defendants or their business, products, services, or other commercial activities in California are in any way affiliated, connected, or associated with Falafel Flame or its goods and services offered under the FALAFEL FLAME® mark.

9

10

11

It is further ordered that Messrs. Temori and Rustakhis, the Unapproved Falafel Defendants, their officers, agents, servants, employees, and all other persons acting in concert or participation with them:

12

13

(1) Remove from display and cease all use of any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FALAFEL FLAME® mark, including from all Internet webpages and social media accounts within these defendants' custody or control; and

14

15

16

(2) Remove from display and cease all use of signage, menus, and other physical materials comprising, bearing or displaying the FALAFEL FLAME® mark within these defendants' custody and control.

17

18

Dkt. No. 35 at 13-15.  The injunction was conditioned on the payment of a $4,000 bond, which

19

Mr. Faizi indicates was posted on October 24, 2022.  *See* Dkt. No. 37; *see also* Dkt. No. 47-3 ¶¶ 3-

20

4 & Ex. A.

21

Mr. Faizi claims that defendants continue to operate the allegedly unapproved eateries in

22

Hayward, Sunnyvale,  Upland, and San Jose, California using the FALAFEL FLAME® mark,

23

and/or continue to advertise the FALAFEL FLAME® mark online, in violation of the Court's

24

injunction.  He requests an order (1) finding defendants in contempt of the Court's injunction,

25

(2) imposing sanctions based on a disgorgement of the unapproved eateries' profits, (3) imposing

26

a fine of $2,500 per day until defendants comply with the Court's injunction, and (4) directing

27

defendants to pay Falafel Flame the attorney's fees incurred in bringing the present motion.

28

United States District Court
Northern District of California

3

## II.    LEGAL STANDARD

A district court has the inherent authority to enforce compliance with its orders through a civil contempt proceeding.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994).  Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *see also Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) ("Civil contempt occurs when a party fails to comply with a court order.").

"The standard for finding a party in civil contempt is well settled:  'The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.'"  *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. Cty. & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).  "'The burden then shifts to the contemnors to demonstrate why they were unable to comply.'"  *Id.* (quoting *Stone*, 968 F.2d at 856 n.9).  "The contempt need not be willful."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695 (internal quotation marks and citation omitted).  However, contempt sanctions are not warranted where the nonmoving party's action "appears to be based on a good faith and reasonable interpretation" of the court's order.  *Id.* (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)).  Additionally, "'[s]ubstantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply.'"  *Id.* (quoting *Gen. Signal Corp.*, 787 F.2d at 1378-79).

Thus, Mr. Faizi must demonstrate by clear and convincing evidence that (1) defendants violated a court order, (2) the noncompliance was more than a technical or de minimis violation, and (3) defendants' conduct was not based on a good faith and reasonable interpretation of the violated order.  *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-05780-LHK, 2017 WL 3394754, at *8 (N.D. Cal. Aug. 8, 2017) (*citing United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010)).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

### III.   DISCUSSION

There is no dispute between the parties that defendants have not complied with the terms of the Court's preliminary injunction.  Indeed, defendants acknowledged at the hearing on the present motion that they have not made any attempt to comply with that order.  *See* Dkt. No. 53. As noted above, the injunction prohibits defendants from (among other things) "[u]sing, imitating, copying, or making any other infringing use of the FALAFEL FLAME® mark"; operating the unapproved eateries under the name "Falafel Flame" or using the FALAFEL FLAME® mark; and engaging in any act likely to "cause confusion or mistake, or to deceive consumers of restaurant services or food/beverage services and products into believing that defendants or their business, products, services, or other commercial activities in California are in any way affiliated, connected, or associated with Falafel Flame or its goods and services offered under the FALAFEL FLAME® mark."  Dkt. No. 35 at 13-14.  Further, defendants were affirmatively required to "[r]emove from display and cease all use of any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FALAFEL FLAME® mark, including from all Internet webpages and social media accounts within these defendants' custody or control" and to "[r]emove from display and cease all use of any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FALAFEL FLAME® mark, including from all Internet webpages and social media accounts within these defendants' custody or control."  *Id.* at 15.  Process servers retained by Mr. Faizi attest that they visited locations in Hayward, Sunnyvale, and Upland, California on dates in December 2022 and January 2023, and observed continued use of the FALAFEL FLAME® mark on signage and menus.  Included with their declarations are photos they took at those locations on the dates in question, documenting their observations.  *See* Dkt. No. 47-4 (December 8, 2022 visit to Upland location); Dkt. No. 47-5 (December 6, 2022 visit to Sunnyvale location); Dkt. No. 47-6 (December 5, 2022 visit to Hayward location); Dkt. No. 47-7 (January 6, 2023 visit to Upland location); Dkt. No. 47-8 (January 6, 2023 visit to Hayward location); Dkt. No. 47-9 (January 6, 2023 visit to Sunnyvale location).  While Mr. Faizi no longer asserts that the eatery in San Jose continues to operate under the FALAFEL FLAME® mark, he believes that the San Jose location now operates as a ghost

kitchen that nonetheless continues to use the FALAFEL FLAME® mark to promote its services online. His counsel submits evidence (i.e., screenshots) indicating that, as of January 5, 2023, all four allegedly unapproved locations continued to advertise and promote the FALAFEL FLAME® mark on Falafelflame.com, Grubhub.com, Doordash.com, Facebook.com, and Ubereats.com. *See* Dkt. No. 47-3 ¶¶ 5-10 & Exs. B-G. Mr. Faizi's evidence is clear and convincing and establishes violations of the Court's injunction, at least with respect to the Hayward, Sunnyvale, and Upland locations.

The evidence is not clear that there is a functioning location in San Jose, whether operating as a ghost kitchen or otherwise. With respect to the San Jose location, Mr. Temori testified that the ghost kitchen no longer exists. While it is unclear when the ghost kitchen closed, there appears to be no dispute that there is no active restaurant operating in San Jose. According to Mr. Temori, a Saratoga location has not yet sold any food and currently is under construction, which is expected to be completed in about two months. Further, Mr. Temori represented to the Court that defendants do not intend to open that location under the name "Falafel Flame." Dkt. No. 53. Mr. Faizi's internet screenshots and his stated belief as to the existence of a San Jose ghost kitchen is not clear and convincing evidence of contempt as to that location.

In their opposition papers, defendants otherwise presented no evidence refuting Mr. Faizi's evidence. Nor did they claim that their noncompliance was merely a technical or de minimis violation, or that their conduct was based on a good faith and reasonable interpretation of the Court's injunction. *See* Dkt. No. 50. Instead, defendants merely argued that "[t]here is no harm here that cannot be remedied through a settlement or damages after trial." *Id.* at 2. They suggested that any remedy for violation of the Court's injunction should be limited to $1,000 per month, per restaurant, commensurate with Falafel Flame's customary licensing fee. *See id.* at 3.

At the hearing, Messrs. Temori and Rustakhis both testified to claimed financial difficulties at the restaurants in question (primarily with respect to the Hayward and Sunnyvale locations), as well as stated concerns that complying with the Court's injunction would cause legal

disputes with their partners[5] in all disputed locations over potential breach of their partnership agreements.  However, defendants have not submitted any evidence substantiating their assertions regarding the financial state of the restaurants at issue, the costs of complying with the Court's injunction, or the basis for their belief that such compliance would lead to legal disputes over their contractual obligations with their partners.

"Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-304 (1947); *see also Bagwell*, 512 U.S. at 827-28 ("Thus, a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant.") (internal quotations and citation omitted); *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008) (civil contempt is characterized by coercive or compensatory purpose, fines payable to the complainant, and conditional nature of the fines imposed).  "Compensatory awards are limited to 'actual losses *sustained as a result of the contumacy*."  *Gen'l Signal Corp.*, 787 F.2d at 1380 (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)); *see also United Mine Workers*, 330 U.S. at 304 (compensatory fines "must of course be based upon evidence of [the] complainant's actual loss[.]").

Mr. Faizi argues that Falafel Flame is entitled to sanctions based on disgorgement of defendants' profits for the period of contumacy.  While disgorgement of profits is recognized as an appropriate measure for a contempt sanction in trademark cases, *see Jerry's Famous Deli, Inc. v. Papanicolaaou*, 383 F.3d 998, 1004 (9th Cir. 2004), Mr. Faizi has presented no evidence to support a sanction based on defendants' profits.  *See, e.g., Adobe Sys., Inc. v. Software Tech.*, No. 5:14-cv-02140-RMW, 2015 WL 6951875, at *6 (N.D. Cal. Nov. 10, 2015) (declining to impose

---

[5] Although the Court ordered defendants and "any other person(s) who has an ownership interest(s) in the establishments that are at issue in the Court's October 12, 2022 preliminary injunction order" to appear and attend the February 14, 2023 hearing in person (*see* Dkt. No. 52), defendants did not inform their partners about that order.  Indeed, Mr. Temori testified that while their partners generally are aware of the October 12, 2022 injunction order, their partners are not aware that the order prohibits the use of the FALAFEL FLAME® mark or that defendants are in violation of that order.

United States District Court
Northern District of California

civil contempt sanctions based on defendants' profits where plaintiff presented no evidence that would enable the calculation of defendants' revenue from violations of the court's preliminary injunction).  Accordingly, Mr. Faizi's request for sanctions based on defendants' profits is denied.

Equally unpersuasive is Mr. Faizi's request for an order imposing a fine of $2,500 per day until defendants comply with the Court's injunction.  Mr. Faizi explains that his proposed fine is based on "$500 per unapproved restaurant and $500 for continuing to market and sell products as 'Falafel Flame' online."  *See* Dkt. No. 47-2 at 2; *see also* Dkt. No. 47-1 at 11.  However, Mr. Faizi has not demonstrated that the proposed fine is based on any actual loss sustained by Falafel Flame. Accordingly, the Court declines to impose a daily fine of $2,500.

More persuasive is defendants' suggestion that any sanction should be based on Falafel Flame's $1,000 monthly licensing fee as compensation for use of its intellectual property.  *See* Dkt. No. 1 ¶¶ 33, 34 & Ex. B.  Although Mr. Faizi objects that such a compensatory scheme will not be effective at coercing compliance and simply assumes that each of the locations in question *could* obtain Falafel Flame's authorization and an approved license, this proposal is logically tied to a quantifiable loss resulting from defendants' noncompliance with the October 12, 2022 injunction.  The Court's injunction took effect on October 24, 2022, when Mr. Faizi says that the required $4,000 bond was posted.  *See* Dkt. No. 37; *see also* Dkt. No. 47-3 ¶¶ 3-4 & Ex. A.  On the record presented, defendants continued to use the FALAFEL FLAME® mark; and, assuming they continue to violate the injunction, as of February 21, 2023, they will owe Falafel Flame $12,000 in licensing fees (i.e., $1,000 x 3 restaurants = $3,000 x 4 months = $12,000).  If defendants continue to violate the terms of the Court's injunction, sanctions will continue to accrue at $1,000 every thirty days for each establishment that remains in noncompliance with the injunction.

There remains an issue regarding where the civil contempt funds should be deposited and how they should be disbursed.  At the hearing, all parties agreed that the funds are payable to Falafel Flame, and not to Mr. Faizi individually.  As noted above, Messrs. Faizi, Temori, and Rustakhis each own a third of the company.  Further complicating matters, it appears that Messrs. Temori and Rustakhis currently control Falafel Flame's financial accounts, although defendants

contend that they have no access to the financial accounts for the Concord location that Mr. Faizi controls.[6]  On this record, and absent any other suggestion by the parties, the Court concludes that the fairest result is to have the contempt sanctions deposited into an escrow account, in compliance with the procedures set out below.

Additionally, the Court agrees that Falafel Flame may recover reasonable attorney's fees and costs incurred in connection with the present motion for contempt.  *See, e.g., SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, No. C11-4991 CW, 2013 WL 4516835, at *3 (N.D. Cal. Aug. 23, 2013) (allowing award of reasonable attorney's fees and costs that plaintiffs incurred in bringing motion for contempt); *Stanley Black & Decker, Inc. v. D & L Elite Investments, LLC*, No. 12-4516-SC, 2013 WL 3799583, at *4 (N.D. Cal. July 19, 2013) ("Attorney fees are recoverable to compensate a party for the costs and expenses incurred in connection with a successful motion for contempt.") (citing *Koninklijke Philips Elecs. N.V.* 539 F.3d at 1042-43).  Briefing on the requested fees shall proceed as set forth below.

## IV.   CONCLUSION

Based on the foregoing, Falafel Flame's motion for an order of contempt is granted in part and denied in part as follows:

(1) Mr. Faizi has not met his burden to establish contempt of the October 12, 2022 injunction with respect to the allegedly unapproved eatery in San Jose, California.  His motion for a finding of contempt and the imposition of sanctions as to that location is denied.

(2) The Court finds Messrs. Temori and Rustakhis in contempt of the October 12, 2022 injunction with respect to the establishments in Hayward, Sunnyvale, and Upland, California.  The Court imposes civil contempt sanctions as to those locations as follows:

   a.  Assuming continued noncompliance with the October 12, 2022 injunction, as of

---

[6] Additionally, defendants maintain that Mr. Faizi has been removed as an officer of Falafel Flame.  As noted during the prior preliminary injunction proceedings, that is an assertion that Mr. Faizi appears to dispute.  *See* Dkt. No. 35 at 4.

United States District Court
Northern District of California

1    February 21, 2023, defendants will owe Falafel Flame $12,000 in licensing fees

2    for the use of the company's intellectual property.

3    b.  Should defendants continue to violate the terms of the Court's October 12, 2022

4    injunction, they must pay an additional $1,000 per month to Falafel Flame

5    every thirty days after February 21, 2023 for each of the Hayward, Sunnyvale,

6    or Upland locations that remain in noncompliance with the injunction.

7    c.  Defendants shall pay the ordered sanctions into an escrow account, in

8    compliance with the procedures set out below, until they comply with the

9    October 12, 2022 injunction.

10   (3) By **February 27, 2023**, Mr. Faizi shall establish an escrow account on behalf of Falafel

11   Flame and file papers with the Court demonstrating that the account has been opened.

12   If it is necessary to identify the account number in any public filings, the account

13   number shall be redacted and identified by only the last three digits or alphanumeric

14   identifiers.

15   a.  Within ten days from the date the escrow account is opened, defendants shall

16   deposit all amounts then due and owing, for each full thirty-day period of

17   noncompliance with the October 12, 2022 injunction, and shall file a certificate

18   of compliance with the Court.

19   b.  Beginning thirty days from February 21, 2023, and every thirty days thereafter,

20   defendants shall continue to deposit sanctions in the amount of $1,000 per

21   month for each of the Hayward, Sunnyvale, or Upland establishments that

22   continues to operate in violation of the Court's October 12, 2022 injunction.

23   Defendants shall file a certificate of compliance the next court day following

24   each such deposit.

25   c.  The funds deposited into the escrow account shall not be released to any party,

26   except by further order of the Court.

27   (4) By **March 1, 2023**, plaintiff's counsel shall file an application with the Court

28   documenting their attorney's fees and costs incurred in connection with the motion for

contempt, including any declarations, timesheets or other documentation necessary to enable defendants and the Court to assess the reasonableness of the requested hourly rates and work performed.  By **March 8, 2023**, defendants shall file a response, which shall address only the amount of the fees requested.  Plaintiff's counsel shall file a reply by **March 15, 2023**.  Unless otherwise ordered, the matter of the requested fees will be deemed submitted on the papers without further oral argument.

**IT IS SO ORDERED.**

Dated: February 15, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge